IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PETER GERACI, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE EYE MARKETING GROUP, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Dated:  November 1, 2017 |

Plaintiff Peter Geraci ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, brings this action upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, against Defendant Eagle Eye Marketing Group, Inc. ("Defendant" or "Eagle Eye") and alleges as follows:

## INTRODUCTION

1. This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of consumers ("Class members") who purchased Defendant's "liquid lawn seeder" known as "Hydro Mousse," which Defendant marketed and advertised as a "quick and easy" way to grow grass.  Instead, Hydro Mousse does not perform as advertised and did not quickly and easily grow grass on the properties of Plaintiff and Class members (the "Defect").

2. This action arises from Defendant's fraudulent and misleading marketing and sale of Hydro Mousse.  Defendant markets and sells Hydro Mousse as "liquid lawn seeder." Defendant claims and warrants that it is "[q]uick and easy – the grass grows where you spray it[,]" that the "[e]co-friendly Spray n' Stay Technology attaches the seed to the soil and reduces the seeds water surface tension allowing it to absorb more water[,]" and that the "[h]igh quality seed mixture blends perfectly with your existing lawn."

3.      Hydro Mousse, however, does not perform as advertised and fails to grow grass in the "quick and easy" fashion promoted by Defendant, or at all.

4.      Defendant failed to disclose the Defect's existence to prospective customers and actively concealed the Defect from Plaintiff and Class members at the time of sale.  Defendant has known of the Defect for years, when consumers began complaining of the ineffectiveness of the product on purchasing platforms, such as Amazon.com and Highya.com.[1]

5.      Defendant has been plagued with customer complaints concerning the failure of Hydro Mousse to live up to its advertising claims for over three years, yet has done nothing to change its marketing or the product.

6.      In short, as a result of Defendant's unfair, deceptive, and/or fraudulent business practices, consumers who purchased Hydro Mousse, including Plaintiff, have been damaged to the extent of the purchase they paid and any costs associated with applying the product.

7.      Had Plaintiff and other Class members known about the Defect at the time of purchase, they would not have bought Hydro Mousse.

8.      Accordingly, Plaintiff brings this action to redress Defendant's violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §501.204(4), violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.*, and breach of express warranties.

## JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of

---

[1]      *See*      https://www.amazon.com/Hydro-Mousse-Liquid-Lawn-System/product-reviews/ B00LMFJ8KA/ref=cm_cr_getr_d_paging_btm_112?sortBy=recent&pageNumber=112      (last visited October 10, 2017).

interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

10. This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Hydro Mousse into the stream of commerce within this district and throughout the United States. Moreover, Defendant has at least one office within this district.

11. Venue is proper in this district pursuant to 28 U.S.C. §1391 because Defendant transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this District. Additionally, Defendant has advertised in this District and has received substantial revenue and profits from its sales of Hydro Mousse in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District. Moreover, Defendant has at least one office within this District.

## PARTIES

### Plaintiff Peter Geraci

12. Plaintiff Peter Geraci ("Plaintiff") is a citizen of the State of Florida, and currently resides in Venice, Florida. On or about May 20, 2017, Plaintiff purchased Hydro Mousse from Home Depot, a stored authorized by Defendant to sell Hydro Mousse in Venice, Florida, for $37.41 for use at his residence in Venice, Florida. Prior to purchasing Hydro Mousse, Plaintiff viewed advertisements for Hydro Mousse through Defendant's marketing campaigns and on the product's packaging. Neither the advertisements nor the Hydro Mousse packaging disclosed that the product does not, in fact, work as advertised. But for Defendant's myriad misrepresentations and omissions concerning the product's effectiveness and performance properties, Plaintiff

3

would not have purchased Hydro Mousse. Plaintiff applied Hydro Mousse to his property as directed by Defendant, yet grass did not grow after application.

**The Defendant**

13. Defendant Eagle Eye Marketing Group, Inc. is a Canadian corporation, with its corporate headquarters located at 119-600 Eglinton Ave. E., Suite 412, Toronto, ON M4G 2K2.

14. Defendant is a corporation that designs, markets, and sells home and garden products, including, but not limited to, lawn products, such as Hydro Mousse.

15. Defendant operates from one or more locations in the United States, including within this District at 400 Returns Road, Wallingford, Connecticut 06494.

## TOLLING OF STATUTES OF LIMITATIONS

16. Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the aforementioned problems with Hydro Mousse until shortly before this class action litigation was commenced.

17. Defendant was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality, and nature of Hydro Mousse, and that the Defect results from a poor design and/or failures in the manufacturing process and poses safety concerns. As a result of Defendant's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.  Hydro Mousse Is Defective**

18. Defendant is a Canadian corporation that sells home and garden products – including Hydro Mousse – throughout the United States in retail stores and online.

19. Defendant claims in its advertisements for Hydro Mousse and on the Hydro Mousse packaging itself that the product is a quick and easy liquid lawn seeder that "grows grass where you spray it!" and helps the consumer go "From Seed To Sod Just Like The Pros!"

20. Defendant also claims that its Hydro Mousse has a "Spray n' Stay Technology," where "[t]he green mousse formula contains an eco-friendly solution that attaches the seed to the soil and reduces the seeds water surface tension allowing it to absorb more water, resulting in a terrific looking lawn!"

21. Defendant also produced a promotional video where it represented to Class members Hydro Mousse's ability to grow grass and its versatility to work in many different conditions. One of Defendant's promotional videos, which are consistent with the representations on its product,[2] described Hydro Mousse as:

    a. Fast and easy;

    b. The grass grows where consumers spray it;

    c. Causes grass to grow like crazy;

    d. Causes grass to grow in hot or cold weather; and

    e. Works on dog spots, high traffic areas, large areas, and shade.

22. Defendant's misrepresentations induce customers to purchase Hydro Mousse, and create a false impression that Hydro Mousse effectively grows grass and that Defendant will stand behind its marketing claims.

23. Purchasers of Hydro Mousse, including Plaintiff, make purchasing decisions based on the information provided by Defendant and its authorized retailers on television, websites, and in marketing literature, advertisements, guarantees, and warranties.

---

[2] *See* https://www.youtube.com/watch?v=YdYSjHDMXwc (last visited November 1, 2017).

24. As Plaintiff and Class members have learned, however, Hydro Mousse does not perform as advertised. Indeed, many consumers report that Hydro Mousse does not work at all.

25. Defendant knowingly and intentionally misrepresented Hydro Mousse's performance properties, and actively concealed and failed to disclose that Hydro Mousse does not perform as advertised. Defendant, instead, engaged in a fraudulent and deceptive marketing campaign in which it failed to disclose to its customers that Hydro Mousse simply could not, and would not, perform as advertised.

26. Defendant has had longstanding knowledge of the deficiencies described herein. Indeed, customers have inundated Defendant with complaints concerning Hydro Mousse's inherently defective nature and failure to perform as advertised.

27. A sampling of complaints dating back to 2014 include:

**Consumer No. 1:**
Don't waste your money! I bought this product almost a month ago after seeing the infomercial and have yet for the grass to grow over the entire 8 x 8 area (I know, results may vary). We have patches of grass and other areas have nothing at all. We prepped the area as instructed and water 3 times a day as instructed as well, only to have small spots of grass. At this pace it will take until year's end to have the entire 8 x 8 space filled (fingers crossed). Could have just bought normal grass seed. Very disappointing as well as extremely annoying! Little grass and a higher water bill! Thanks.[3]

**Consumer No. 2:**
Don't purchase this does not grow grass! Waste of $!!!!!.[4]

**Consumer No. 3:**
A total waste of time and money. These folks should be charged with false advertising. No mouse, just green coloured water. Stay away.[5]

---

[3]  *See* https://www.amazon.com/Hydro-Mousse-Liquid-Lawn-System/product-reviews/B00LMFJ8KA/ref=cm_cr_getr_d_paging_btm_112?sortBy=recent&pageNumber=112, by "Tom Miller" on July 24, 2014 (last visited October 10, 2017).
[4]  *Id*. by "jeny wagner" on August 16, 2014.
[5]  *Id*. by "David Eyre" on September 7, 2014.

**Consumer No. 4:**
Scam…scam…scam!!! This product is PERFECT for those that want to spray green-colored, non-mousse'y water onto a patch of deadened, or non-existent grass, in hopes of new/fresh grass growing, but never seeing a result!!! So, if you LOVE WASTING MONEY, and don't mind TONS of spam phone calls from the company after your purchase, then this product is for you!![6]

**Consumer No. 5:**
This product did not come close to its claims of growing my lawn. Do not buy this product, it is a complete waste of money and time.[7]

**Consumer No. 6:**
Don't buy this. Product does not work as advertised. Followed directions and only pale green water shot out not a seed distribution foam. Very messy.[8]

**Consumer No. 7:**
I followed the instructions completely and got basically zero from this product. I went further and applied about a quarter inch of peat moss on top to hold moisture. I am sorry I wasted money on this. It doesn't work.[9]

**Consumer No. 8:**
I bought this back in June and followed exactly as it said and it did not work, when it rained the birds ate the seeds and no grass, still huge bald spots. Then you call and they tell you to wait more time and keep watering. By then the 30-day warranty is one and you CAN'T get your money back.[10]

**Consumer No. 9:**
I bought this at home depot in overland, Missouri. Followed all the directions and very, very few seedlings grew. For the most part, it just plain didn't work. Don't buy it, or you will regret it![11]

**Consumer No. 10:**
Hydro Mousse did not work what so ever. In fact [it] ruined my yard and killed my grass![12]

---

[6]   *Id*. by "Susan Hiers" on October 11, 2014.
[7]   *Id*. by "Nelson I Perez" on April 19, 2017.
[8]   *Id*. by "eddie yates" on March 21, 2017.
[9]   *See* http://www.highya.com/hydro-mousse-liquid-lawn-reviews by "John David Riddle, Great Falls Montana, July 26, 2017" (last visited October 10, 2017).
[10]  *Id*. by "Araceli Norte, TX, Oct 8, 2016."
[11]  *Id*. by "Julia Bowen, St. Louis, MO, Aug 19, 2016"
[12]  *Id*. by "Jeremy, Los Angeles, CA, Jan 17, 2016"

**Consumer No. 11:**
The product is false and does not do as advertised. The coverage is pathetic. I would never buy or recommend this product.[13]

28.     Indeed, Defendant has responded to complaints made on websites such as Amazon.com from 2014 through 2017, thereby demonstrating its long-standing knowledge of the Defect and its effect on consumers:

**Consumer No. 12:**
Wouldn't buy again. DOES NOT WORK. Wouldn't even cover 50 sq ft. Do yourself a favor and buy SOD.

**Defendant's response:**
Dear Hydro Mousse Customer,
We are sorry to hear that you are having trouble with your Hydro Mousse and would like you to have a better experience using Hydro Mousse. Our goal is to help you achieve success with Hydro Mousse and have found that many of your questions can be answered by visiting: http://hydromousse.info. If you need further assistance please contact us at: amazon@hydromousse.com. We appreciate you bringing this matter to our attention.
Regards,
Customer Care Specialist[14]

**Consumer No. 13:**
The only thing that turned green were my fingers from the green dye! Would not recommend even to my worst enemy!

**Defendant's Response:**
Dear Hydro Mousse Customer,
We are sorry to hear that you are having trouble with your Hydro Mousse and would like you to have a better experience using Hydro Mousse. Our goal is to help you achieve success with Hydro Mousse and have found that many of your questions can be answered by visiting: http://hydromousse.info. If you need further assistance please contact us at: amazon@hydromousse.com We appreciate you bringing this matter to our attention.
Regards,
Customer Care Specialist[15]

---

[13]    *Id*. by "Dave, Sunshine Coast, BC, Canada, Sep 22, 2015"

[14]    *See* https://www.amazon.com/Hydro-Mousse-Liquid-Lawn-System/product-reviews/B00LMFJ8KA/ref=cm_cr_getr_d_paging_btm_112?sortBy=recent&pageNumber=112, by "Amazon Customer" on May 30, 2017 (last visited October 10, 2017).

[15]    *Id*. by "Gregory Ackerman" on August 2, 2014.

29. The timing of these illustrative complaints, coupled with the fact that Defendant has consistently responded to consumer complaints since 2014, establishes Defendant knew of the Defect in Hydro Mousse and continued to market the product as a quick and easy way to grow grass on a consumer's property, while masking its failures.

**B.     Plaintiff's Experiences with Hydro Mousse**

30. On May 20, 2017, Plaintiff applied two packages of Hydro Mousse to his property as directed by Defendant's instructions.

31. Since applying Hydro Mousse, no new grass has grown on Plaintiff's property; Hydro Mousse has not performed as advertised.

32. Pictures of Plaintiff's lawn after application of Hydro Mousse, demonstrate that, far from Defendant's claims that "grass grows where you spray it[,]" Plaintiff's property remains bare:





33. Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations pertaining to Hydro Mousse, including, but not limited to, the cost of the Hydro Mousse. Had Defendant disclosed the Hydro Mousse Defect to Plaintiff, he would not have bought the product.

## CLASS ALLEGATIONS

34. Plaintiff brings this action on his own behalf, and on behalf of a nationwide class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:**

All persons or entities in the United States who have purchased Hydro Mousse.

35. In the alternative to the Nationwide Class, and pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), Plaintiff seeks to represent the following Florida class in the event that the Court declines to certify the Nationwide Class:

**Florida Class**

All persons or entities in Florida who have purchased Hydro Mousse.

36. The Florida Class shall be referred to herein as the "Florida Class."

37. The Nationwide Class and the Florida Class shall be collectively referred to herein as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased Hydro Mousse for resale, and the Judge(s) assigned to this case.

38. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claim.

39. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. Plaintiff believes that tens of thousands of Hydro Mousse products have been sold throughout the United States, including in Florida, where Plaintiff resides.

40. <u>Existence and Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a. whether Defendant engaged in the conduct alleged herein;

   b. whether Defendant designed, manufactured, advertised, marketed, distributed, sold, or otherwise placed Hydro Mousse into the stream of commerce in the United States;

   c. when Defendant learned of the Defect in Hydro Mousse;

   d. whether Defendant knew of the Defect in Hydro Mousse, yet failed to disclose the problem and its consequences to its customers;

      e.   whether a reasonable consumer would consider the Defect in Hydro Mousse or its consequences to be material; and

      f.   whether Plaintiff and members of the Class are entitled to relief and, if so, in what amount.

41.   <u>Typicality</u>: All of the Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased the defective Hydro Mousse, as did each member of the Class. Furthermore, Plaintiff and all members of the Class suffered monetary and economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

42.   <u>Adequacy</u>: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Class that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and he intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

43.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injuries suffered by each individual Class member are relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation resulting from Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress Defendant's misconduct. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

44.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF THE FLORIDA
DECEPTIVE & UNFAIR TRADE PRACTICES ACT
Fla. Stat. §501.201,** *et seq.*
**(On Behalf of the Nationwide Class or, Alternatively, the Florida Class)**

45.     Plaintiff and the Class re-allege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

46.     Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1).

47.     The actions of Defendant, as set forth above, occurred in the conduct of trade or commerce.

48.     In the course of Defendant's business, it willfully failed to disclose and actively concealed the unsuitability of Hydro Mousse for Plaintiff's and Class members' properties. Accordingly, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in Florida Statute §501.204(1), including representing that Hydro Mousse has characteristics, uses, benefits, and qualities which it does not have; advertising Hydro Mousse with the intent not to sell it as advertised; and otherwise engaging in conduct likely to deceive.

49.     Defendant should have disclosed this information because it was in a superior position to know the true facts related to Hydro Mousse, and Plaintiff and Class members could

not reasonably be expected to learn or discover the true facts related to Hydro Mousse. Defendant, by the conduct, statements, and omissions described above, also knowingly and intentionally concealed from Plaintiff and Class members that Hydro Mousse suffered from the aforementioned problems.

50. These acts and practices have deceived Plaintiff and are likely to deceive the public. Defendant, by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class that Hydro Mousse suffered from the aforementioned problems, breached its duties to disclose these facts, violated FDUTPA, and damaged Plaintiff and the Class. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

51. The injuries suffered by Plaintiff and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and Class members should have reasonably avoided.

52. Defendant's conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiff and the Class known about the defective nature of Hydro Mousse, they would not have purchased Hydro Mousse.

## SECOND CAUSE OF ACTION

**BREACH OF WRITTEN WARRANTY
UNDER THE MAGNUSON-MOSS WARRANTY ACT
(On Behalf of the Nationwide Class, or Alternatively, the Florida Class)**

53. Plaintiff and the Class re-allege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

54. Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(3).

55. Defendant is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§2301(4)-(5).

56. Hydro Mousse is a "consumer product" within the meaning of 15 U.S.C. §2301(1).

57. Defendant's warranties are "written warranties" within the meaning of 15 U.S.C. §2301(6).

58. Defendant affirmatively promised that Hydro Mousse would grow grass where it was sprayed, in "hot or cold weather," in difficult conditions including "dry spots, dog spots, high traffic areas and shade," as well as the fact that consumers – with Hydro Mousse – could "go from seed to sod just like the pros!" Defendant's affirmations of fact, promises, and/or descriptions became part of the basis of the bargain.

59. Plaintiff and the other Class members relied on the existence of the express warranties in deciding whether to purchase Hydro Mousse.

60. Defendant's breach of the express warranties has deprived Plaintiff and the other Class members of the benefit of their bargain.

61. The amount in controversy of Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

62. Defendant has been afforded a reasonable opportunity to cure its breach of the written warranties, and Plaintiff and the other Class members were not required to do so because

providing Defendant a reasonable opportunity to cure its breach of written warranties would have been futile. Defendant was also on notice of the problems inherent in Hydro Mousse from the complaints it received from Class members.

63. As a direct and proximate result of Defendant's breach of the written warranties, Plaintiff and the other Class members sustained damages and other losses in an amount to be determined at trial. Defendant's conduct damaged Plaintiff and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

### THIRD CAUSE OF ACTION

**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nationwide Class or, Alternatively, the Florida Class)**

64. Plaintiff and the Class re-allege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

65. Defendant's product labels expressly warrants that "the grass grows where you spray it," that it is perfect for "dog spots, high traffic areas, and shaded areas," and that consumers can go from "Seed to Sod Just Like the Pros."

66. Defendant's website and advertisement videos make additional claims that Hydro Mousse is "fast and easy," causes "grass to grow like crazy," and causes "grass to grow in hot or cold weather."

67. Plaintiff and Class members did in fact rely upon Defendant's misrepresentations and omissions concerning the non-defective nature of Hydro Mousse.

68. These promises became part of the basis of the bargain between the parties and created collective express warranties that Hydro Mousse would conform to Defendant's affirmations and promises.

16

69. Defendant breached its express warranty by supplying Hydro Mousse in a condition that does not satisfy the warranty obligations and fails to fulfill the promises of Defendant and its marketing campaign.

70. Plaintiff has complied with the warranty terms, including application instructions.

71. As a direct and proximate result of the breach of express warranties, Plaintiff and Class members have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

72. Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendant for damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. Appoint Plaintiff as the representative of the Class and his counsel as Class counsel;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all issues so triable.

Dated:  November 1, 2017         **SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**

/s  Joseph P. Guglielmo
Joseph P. Guglielmo
Erin Green Comite
156 South Main Street
P.O. Box 192
Colchester, Connecticut 06415
Telephone:   860-537-5537
Facsimile:    860-537-4432
Email: jguglielmo@scott-scott.com
       ecomite@scott-scott.com

Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
**MCCUNE WRIGHT AREVALO LLP**
555 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone:   610-200-0580
Facsimile:    610-727-4360
Email: jgs@mccunewright.com
       mds@mccunewright.com
       jbk@mccunewright.com

Bryan Clobes
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
1101 Market St., Suite 2650
Philadelphia, Pennsylvania 19107
Telephone:   215-864-2800
Facsimile:    215-864-2810
Email:  bclobes@caffertyclobes.com

Daniel O. Herrera
Christopher P.T. Tourek
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
150 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 312-782-4485
Email: dherrera@caffertyclobes.com
ctourek@caffertyclobes.com

*Counsel for Plaintiff and the Putative Class*